# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LESLIE J. WEISS, as Receiver for ) <br> The Nutmeg Group, LLC ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> HARVEY ALTHOLTZ, WEALTH ) <br> STRATEGY PARTNERS, LLP, and ) <br> ALTHOLTZ FAMILY LIMITED ) <br> PARTNERSHIP, ) <br> ) <br> Defendants. ) | No. 10 C 02609 <br><br> Judge Edmond E. Chang |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Leslie Weiss, a federally appointed receiver for The Nutmeg Group, alleges that Defendants Harvey Altholtz, Wealth Strategy Partners, and Altholtz Family Limited Partnership are liable for the finder's fees Nutmeg paid to Altholtz. Weiss's second amended complaint asserts claims under the Securities and Exchange Act of 1934 (Exchange Act), 15 U.S.C. § 78a *et seq.*, the Florida Securities Act, F.S.A. § 517.01 *et seq.*, and unjust enrichment.[1] R. 46. Defendant has moved to dismiss [R.51] all claims pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants the motion to dismiss with prejudice.

---

[1]Subject matter jurisdiction is secure under both federal question and supplemental jurisdiction over the state law claim, as well as diversity jurisdiction over the state law claim, *see* R. 68, 70.

# I.

In September 2003, Nutmeg and Harvey Altholtz entered into a letter agreement whereby Altholtz would find prospective investors for Nutmeg's investment funds in exchange for a set percentage fee. R. 46 ¶ 19.[2] Altholtz was the general partner, principal equity holder, and operator of both Wealth Strategy Partners, LLP (Wealth Strategy), and the Altholtz Family Limited Partnership (AF Partnership). *Id.* ¶¶ 2-3. Neither Altholtz nor the partnerships he controlled were registered broker-dealers with the Securities and Exchange Commission (SEC) or the Florida Securities Commission. *Id.* ¶¶ 16-17. Between 2006 and 2008, Nutmeg paid Altholtz a total of $125,995.65 in finder's fees based on the letter agreement. *Id.* ¶ 21.

In March 2009, the SEC filed suit against Nutmeg and the two individuals – Randall and David Goulding – who had controlled Nutmeg up until then. *Id.* ¶ 11. Five months later, the judge assigned to the SEC suit appointed Leslie Weiss as the receiver for Nutmeg. *Id.* ¶ 1. As a court-appointed receiver, Weiss is authorized to oversee all aspects of Nutmeg's business. *Id.* ¶ 11.

In April 2010, Weiss filed this suit against Altholtz, based on the Exchange Act of 1934, the Florida Securities Act, and Illinois state law. R.1. After Altholtz moved to dismiss, R.27, Weiss amended the complaint twice. R. 43, R.46. Altholtz has filed a motion to dismiss the Second Amended Complaint, R.51, and that motion is now fully briefed.

---

[2]Citation to the docket is "R." followed by the entry number and, when necessary, the relevant page or paragraph number.

## II.

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *McGowan v. Hulick*, 612 F.3d 636 (7th Cir. 2010) (courts accept factual allegations as true and draw all reasonable inferences in plaintiff's favor). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

## III.

A.   **Exchange Act**

   1.   **Statute of Limitations**

As a threshold matter, the Court addresses whether the Exchange Act claims meet the statute of limitations. The Exchange Act provides a number of express causes of action, and with one exception,[3] all provide the same statute of limitations period: 1 year after discovery and 3 years after the violation. And although Section 29(b) does not set out a specific statutory limitations period, the Supreme Court instructs that the applicable limitations period should be determined from the most analogous federal statute. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 362 (1991). Courts in this district have held that the 1-and-3-year statutory periods apply to Section 29(b) claims arising from violations of Section 15(a). *E.g., Celsion Corp v. Stearns Mgt. Corp*, 157 F.Supp. 2d 942, 947 (N.D. Ill. 2001). And those limitations periods, as relatively short as they are, were chosen by Congress specifically for securities cases. "The statute of limitations in securities fraud cases serves, as we have emphasized in other opinions, important public purposes." *Law v. Medco Research, Inc.*, 113 F.3d 781, 786 (7th Cir. 1997). "Congress wrote inquiry notice into the one-year statute of limitations in that section. Three years is an age in the stock market. If the

---

[3] Section 16(b), 15 U.S.C. § 78p(b), sets a 2-year rather than a 3-year period of repose. *Lampf*, 501 U.S. at 360 n.5. In 2002, Congress added a new statute of limitations for actions based on fraud and deceptive conduct – two years after discovery and five years after the violation. 28 U.S.C. § 1658. But Weiss has not based her action on statutes governing fraud or deceptive conduct, so the two and five year limitations period do not apply.

4

suspicious investor had a wide choice of times at which to sue within a three-year period rather than being required to sue no more than one year after the earliest possible date, the opportunistic use of federal securities law to protect investors against market risk would be magnified." *Tregenza v. Great American Communications Co.*, 12 F.3d 717, 722 (7th Cir. 1993).

Altholtz argues that the statute of limitations precludes the Section 29(b) claims for two reasons. First, he argues that some of the purported illegal sales – stretching from 2006 to 2008, according to Weiss – were made over three years before the filing of the complaint. R. 51 at 9. Second, Altholtz's failure to register with the SEC was easily discoverable by looking at the Financial Industry Regulatory Authority's (FINRA) website, which Weiss could have done more than a year before the complaint was filed. Because the discovery rule starts the clock based on "facts a reasonably diligent plaintiff would have known," Altholtz argues that Weiss is barred from bringing a claim. R. 51 at 10-11 (citing *Merck & Co., Inc. v. Reynolds*, 130 S. Ct. 1784, 1796 (2010)).

Weiss does not dispute Altholtz's interpretation of the limitations period or their applicability to this case.[4] Instead, she requests that the Court apply the equitable tolling doctrine. R. 54 at 6. Equitable tolling "permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital

---

[4]Weiss makes a fleeting argument that the statute of limitations does not apply to some of Altholtz's violations because they occurred less than three years before the complaint was filed. R. 54 at 6. She does not, however, address Altholtz's second argument: that they do not meet the one-year requirement. *Id.*

information bearing on the existence of his claim." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990). Weiss explains that based on her diligence in bringing this suit just 9 months following her appointment as Nutmeg's receiver, this Court should toll the limitations period. R. 54 at 6.

But Weiss presents no authority indicating that the appointment of a receiver should permit her to invoke the equitable tolling doctrine. The cases she cites, *In re Olsen*, 36 F.3d 71 (9th Cir. 1994), and *In re Stanwich Fin. Servs. Corp.*, 29 B.R. 25 (Bankr. D. Conn. 2003), were actions brought by trustees in the bankruptcy context. Altholtz, on the other hand, presents authority where the appointment of a receiver did not trigger equitable tolling. R. 51 at 11 (citing *Wuliger v. Christie*, 310 F.Supp. 2d 897, 909 (N.D. Ohio 2004) ("There is no basis in law which allows circumvention of the applicable statute of limitations in situations where a non-governmental receiver is appointed by the court.") Although this authority is not directly controlling, other courts have also adopted this line of reasoning. *E.g., Friedlob v. Trustees of Alpine Mut. Fund Trust*, 905 F.Supp. 843, 853 (D. Colo. 1995) (rejecting argument that equitable tolling would allow receiver to bypass the one-year/three-year limitations period). Therefore, this Court will not exercise its discretion to exercise equitable tolling.

Weiss argues next that the adverse domination doctrine applies here. R.54 at 7. Adverse domination allows the tolling of the statute of limitations "where the entity [to whom the cause of action belonged] is controlled by or dominated by wrongdoers." *Freeland v. Enodis Corp.*, 540 F.3d 721, 741 (7th Cir. 2008) (citing *Resolution Trust*

6

*Corp. v. O'Bear, Overholser, Smith & Huffer*, 840 F.Supp. 1270, 1284 (N.D. Ind.1993)). "The rationale behind the adverse domination doctrine is premised upon the principle that officers and directors who have harmed the entity cannot be expected to take legal action against themselves." *Freeland,* 540 F.3d at 741. But the rationale underlying the doctrine limits its application to suits against the officers and directors who controlled the entity. "It is an equitable doctrine . . . for claims by a corporation *against its officers and directors . . .*" *Lease Resolution Corp. v. Larney*, 719 N.E.2d 165, 170 (Ill. App. Ct. 1999) (emphasis added). Weiss has not alleged that the Defendants in this case have ever controlled or dominated Nutmeg. The adverse domination doctrine is inapplicable here. Because the 1-year-from-discovery limitations period applies, Weiss's Exchange Act claims are barred.

## 2. Failure to State a Claim

For the sake of completeness, the Court will address whether Weiss's Exchange Act claims state a claim. Weiss first alleges that Altholtz failed to register with the Securities and Exchange Commission. R. 46 ¶ 16. Weiss argues that this failure means that Altholtz violated Section 15(a), which provides, in pertinent part:

> It shall be unlawful for any broker or dealer . . . to make use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security . . . unless such broker or dealer is registered in accordance with subsection (b) of this section.

15 U.S.C. § 78o (a)(1). A violation of Section 15(a) triggers Section 29(b), which Weiss argues provides her with a private right of action to sue for damages.[5] According to Section 29(b):

> Every contract made in violation of any provision of this chapter or of any rule or regulation thereunder, and every contract (including any contract for listing a security on an exchange) heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this chapter or any rule or regulation thereunder, shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, or regulation, shall have made or engaged in the performance of any such contract . . . .

15 U.S.C. § 78cc(b). Weiss seeks to recover around $125,995 in damages – the amount that Nutmeg paid to Altholtz in finder's fees. R.46 ¶ 29. Weiss acknowledges that the text of Section 29(b) merely deems void those contracts that violate the Exchange Act and does not expressly provide a cause of action to recover damages. R.54 at 4. She argues, however, that courts have recognized an implied right of action for damages under Section 29(b). *Id.*

Altholtz counters by arguing, first, that Weiss cannot rely on an implied cause of action under Section 29(b). R. 57 at 3. The Exchange Act was intended to protect purchasers, according to Altholtz, and not issuers like Nutmeg or Weiss, who stands in Nutmeg's shoes. *Id.* Altholtz does not, however, cite any authority supporting this

---

[5]Some plaintiffs have attempted to imply a private right of action based on Section 15(a) itself without going through Section 29(b). Courts have refused to do so. *E.g., SEC v. Seaboard*, 677 F.2d 1301,1313-14 (9th Cir. 1982) (no implied private right of action under Section 15); *see also Asch v.Philips, Appel & Walden, Inc.*, 867 F.2d 776, 777 (2d Cir. 1989) (no implied private right of action under Section 15(c)). Although the Seventh Circuit has not directly addressed this question, it has explained (in line with the Supreme Court's admonitions) that a "strong presumption exists against the creation of an implied private right of action." *West Allis Mem'l Hosp., Inc. v. Bowen*, 852 F.2d 251, 254 (7th Cir.1988).

argument. Section 29(b) itself broadly refers to "[e]very" contract made in violation of "any provision of this chapter or of any rule or regulation," regardless of whether a purchaser or issuer is the beneficiary of the violated statutory provision or rule. Moreover, notwithstanding the strong recent trend against implied causes of action, courts have long permitted plaintiffs to invoke an implied private right of action specifically under Section 29(b). *See, e.g., Regional Properties*, 678 F.2d 552, 557 (5th Cir. 1982) ("courts have uniformly either held or assumed that such suits can be brought"); *see also* Hazen, Thomas Lee, Federal Securities Law Second Edition 120 (2003) ("With the exception of Rules . . . 29(b), recognition of additional implied private remedies under the federal securities laws seems unlikely.").

Altholtz's second argument is that, even if an implied remedy is available to Weiss, she still cannot prevail because a party cannot recover fees it has already paid to an unregistered broker. R. 51 at 6-8. In support of this position, Altholtz cites the Fifth Circuit's decision in *Regional Properties*.[6] *Id.* In *Regional Properties*, two real estate developers hired a broker to structure limited partnerships and to market the limited partnership interests. 678 F.2d at 554. Upon discovering that the broker was unregistered, the real estate developers sued to recover the fees they had transferred to him. *Id.* at 556. Some of the fees had already been paid to the broker. *Id.* The

---

[6] Altholtz also cites *Bankers Life and Casualty Co. v. Bellanca Corp.*, 288 F.2d 784 (7th Cir. 1961). R. 51 at 8. There, a buyer accepted the first of two deliveries of stock but subsequently learned of the illegality of the contract. *Bellanca*, 288 F.2d at 786. The buyer then sought to rely on Section 29(b) to avoid the contract entirely, thereby relieving it from having to pay for the first delivery. *Id.* Here, Weiss is not seeking to avoid the contract but to rely on Section 29(b) to claim damages.

9

remainder was held in an escrow account. *Id.* The district court ordered that the fees in the escrow account be returned to the developers. *Id.* at 557. But the district court allowed the broker to retain the amounts it had already been paid because the parties should not be returned to their "status quo ante." *Id.* The district court's decision was affirmed by the Court of Appeals. *Id.* at 564.

The Fifth Circuit explained that the broker was not unjustly enriched because he had actually done the work he had promised the developers. "The person who paid his fee has received actual services. The law, therefore, leaves the parties where it found them." *Id.* The Fifth Circuit stopped short of saying, however, that all fees that are paid to unlicensed parties cannot be recovered. Instead, it explained that the facts of the case must be balanced:

> the extent of the enrichment and the degree of unjustness wrought by its retention weighed against the policy against enforcement, the extent of the non-violator's participation, and whether a judgment depriving the violator of the benefits received will subvert the policy underlying the rule of law that makes the transaction illegal.

*Id.* Other district courts have adopted the principle laid out in *Regional Properties*. *E.g., Energytec v. Proctor*, 516 F. Supp.2d 660, 675 (N.D. Tex. 2007); *Prudential-Bache Securities, Inc. v. Cullather*, 678 F. Supp. 601, 607 (E.D. Va. 1987). It is not entirely clear whether this test can be grounded in the text of Section 29(b) (although that uncertainty perhaps arises from the implied nature of the cause of action). But Section 29(b) does declare violative contracts "void," which by itself does not necessarily require a claw-back or restitution of payments made under the contract in all instances,

particularly where a party to the contract did otherwise receive the benefit of the bargain. To the extent that the Fifth Circuit was simply applying established principles of contract law and unjust enrichment, *Regional Properties* was reasonably interpreting what it means to "void" a contract under Section 29(b). Weiss has not cited any legal authority that contradicts the reasoning of *Regional Properties*.[7]

In applying the balance of factors here, Nutmeg should not be able to recover the already-paid fees. Although Altholtz allegedly held himself out as a broker despite being unregistered, he did eventually succeed in finding purchasers for Nutmeg. R. 46 ¶ 21. Nutmeg was a financially savvy entity which operated multiple investment funds, *see* R. 46, Exh. A, § II(B), and indeed Weiss's substantial efforts as Nutmeg's receiver shows the extensiveness of Nutmeg's operations, *see* R. 338, NDIL Case No. 09 C 1775 (receiver's motion for attorney's fees). Nutmeg was sufficiently sophisticated that it should have conducted (and perhaps did) due diligence on its finders. Nutmeg could have easily used the FINRA search website to quickly learn whether Altholtz was a registered broker-dealer. Weiss has not alleged that Altholtz engaged in fraud against *Nutmeg* (as distinct from the purchasers) by holding himself out as a registered broker-dealer. Therefore, allowing Altholtz to keep the finder's fees would not contradict the purpose of the Exchange Act. Even if the limitations period was satisfied, the Court would dismiss the Exchange Act claims for failure to state a claim.

---

[7]Weiss does argue that she meets *Regional Properties'* three-part test that determines whether a person can avoid a contract under Section 29(b). R. 54 at 5. But that does not address whether a party should recover fees that have already been paid.

### B. Florida Securities Act

Weiss also alleges that Altholtz violated the Florida Securities Act (FSA) when he sold securities as an unregistered broker. R. 46 ¶¶ 30-32. The applicable statute provides, in pertinent part:

> No dealer, associated person, or issuer of securities shall sell or offer for sale any securities in or from offices in this state, or sell securities to persons in this state from offices outside this state, by mail or otherwise, unless the person has been registered with the office pursuant to the provisions of this section . . . .

F.S.A. § 517.12(1). Altholtz points out that another provision within the F.S.A., namely, § 517.211, limits remedies specifically to the *purchaser* of the security. Because Weiss, standing in the shoes of Nutmeg, was a *seller,* she cannot prevail.

Weiss counters by arguing that as a receiver, she generally has greater rights than Nutmeg. R. 54 at 9 (citing *Wing v. Horne*, 2009 WL 2929389 (D. Utah Sept. 8, 2009); *S.E.C. v. Cook*, 2001 WL 256172 (N.D. Tex. Mar. 8, 2001); *Marion Trust Co. v. Blish*, 84 N.E. 814, 816 (Ind. 1908); *Hammond v. Cline,* 84 N.E. 827, 828 (Ind. 1908)). The courts in these cases recognized that in certain circumstances, the receiver does have greater rights to recover than the corporation in receivership. But the cases do not address the specific relevant question here: can a receiver for a *seller* recover under the FSA when the statute limits recovery to *purchasers*?

First, the Court must address the threshold question of whether Weiss has standing to bring this claim at all under general principles governing receivership, separate and apart from the Florida law. Altholtz cites *Troelstrup v. Index Futures*

*Group,* 130 F.3d 1274, 1277 (7th Cir. 1997), for the proposition that an appointed receiver does not have standing to sue on behalf of the corporation's creditors. R. 57 at 9-10. *Troelstrup*, however, involved a receiver who stepped into the shoes of the displaced executive who was responsible for defrauding investors. *Id.* The Seventh Circuit explained that because the receiver did not actually represent the corporation, he did not have standing to sue on behalf of the investors. *Id.* Here, Weiss is, in fact, a receiver for the corporation. The Seventh Circuit has held that if a receiver is stepping into the shoes of a corporation, the receiver *does* have standing to sue to recover on behalf of the corporation's aggrieved investors. *Scholes v. Lehmann*, 56 F.3d 750, 754 (7th Cir. 1995). With standing established under general principles governing receivers, the Court now turns to the Florida law.

When interpreting a statute, Florida courts have explained that a statute should be interpreted based on its literal meaning and its legislative intent. *Griffis v. State*, 356 So.2d 297, 299 (Fla. 1978). That intent, however, is still "determined primarily from the language of the statute." *St. Petersburg Bank & Trust Co. v. Hamm*, 414 So.2d 1071, 1073 (Fla.1982). The Florida Securities Act provides that:

> Every sale made in violation of . . . 517.12(1) . . . may be rescinded at the election of the *purchaser* . . . Each person making the sale and every director, officer, partner, or agent of or for the seller, if the director, officer, partner, or agent has personally participated or aided in making the sale, is jointly and severally liable to the *purchaser* in an action for rescission, if the *purchaser* still owns the security, or for damages, if the *purchaser* has sold the security.

F.S.A. § 517.211(1) (emphases added). Here, the "purchaser" is the party afforded protection by the statute's text. The purchaser is the subject of the provision's protections. The words "issuer" or "seller," on the other hand, are never mentioned. Therefore, the text of the statute does not cover sellers or issuers like Nutmeg. Therefore, Weiss cannot proceed on her FSA claims.

### C. Unjust Enrichment

Weiss's final claim is for unjust enrichment under Illinois law. R. 46 ¶¶ 34-39. The theory of unjust enrichment is based on a contract implied in law. In Illinois, a plaintiff may recover if she can show that the defendant "voluntarily accepted a benefit which would be inequitable for him to retain without payment." *People ex rel. Hartigan v. E & E Hauling*, 607 N.E.2d 165, 177 (Ill. 1992) (citing *Premier Elec. Constr. Co. v. La Salle Nat'l Bank*, 477 N.E.2d 1249 (Ill. App. Ct. 1985)). A complaint need only allege that there has been unjust retention of a benefit by one party to the detriment of another against the fundamental principles of justice and equity. *Firemen's Annuity and Benefit Fund of City of Chicago v. Mun. Emp.*, 579 N.E.2d 1003, 1007 (Ill. App. Ct. 1991) (citing *Kenneke v. First Nat'l Bank of Chicago*, 382 N.E.2d 309 (Ill. App. Ct. 1978)). Here, Weiss has alleged that Altholtz retained fees without providing any benefits to Nutmeg. R. 46 ¶¶ 37-38.

Altholtz counters by making two arguments as to why the unjust enrichment claim cannot succeed. First, Altholtz argues that Weiss fails to allege that Nutmeg received no benefit from his performance. R. 51 at 12-13. Second, he argues that

14

because Nutmeg paid the fees, the voluntary payment doctrine – which precludes a party from recovering fees that are knowingly paid to unlicensed persons – necessarily defeats the unjust enrichment claim. *Id.* at 13. Weiss argues that these two issues must be resolved at trial and not at the pleading stage. R. 54 at 10-12.

Under the voluntary payment doctrine, money voluntarily paid under a claim of right to the payment generally cannot be recovered.[8] *Illinois Glass Co. v. Chicago Tel. Co.*, 85 N.E. 200 (Ill. 1908). There are, however, two exceptions: (1) if there is fraud, misrepresentation, or mistake of fact; or (2) if the payment was made under circumstances amounting to compulsion. *Commercial Nat'l Bank v. Bruno*, 389 N.E.2d 163, 167 (Ill. 1979); *see also Hartford v. Doubler*, 434 N.E.2d 1189, 1191 (Ill. App. Ct. 1982). These 'exceptions' to the voluntary payment doctrine are actually treated as substantive elements that must be pled in the plaintiff's complaint. *E.g., Smith v. Prime Cable of Chicago*, 658 N.E.2d 1325, 1330 (Ill. App. Ct. 1995) (dismissed after plaintiff failed to plead facts indicating compulsion); *Jursich v. Arlington Heights Fed. Sav. & Loan Ass'n*, 441 N.E.2d 864, 867 (Ill. App. Ct. 1982) (dismissed after plaintiff failed to plead facts indicating fraud).

---

[8] The rationale behind the doctrine is that "parties treat with each other on equal terms, and if litigation is intended by the one of whom the money is demanded, it should precede payment. When the person making the payment can only be reached by a proceeding at law, he is bound to make his defense in the first instance, and he cannot postpone the litigation by paying the demand in silence or under a reservation of right to litigate the claim, and afterward sue to recover the amount paid." *Smith v. Prime Cable of Chicago,* 658 N.E.2d 1325, 1330 (Ill. App. Ct. 1995).

Here, Weiss has made no allegations that would fit her situation into an exception to the voluntary payment doctrine. According to the second amended complaint, Nutmeg paid Altholtz the finder's fees. R. 46 ¶ 21. The complaint does not allege that Altholtz compelled Nutmeg to pay the finder's fee. Nor does the complaint list any allegations that there was misrepresentation or a mistake of fact. There is no mention of fraud at all.[9] Because Weiss cannot overcome the voluntary payment bar, the unjust enrichment claim cannot succeed.

## IV.

For the reasons stated above, Defendants' motion to dismiss [R. 51] the second amended complaint is granted. The dismissal is with prejudice: Plaintiff has already amended the complaint twice, once in reaction to Defendants' motion to dismiss the initial complaint, R. 27. And despite amending the complaint twice, Plaintiff has not alleged fraud or mistake that could overcome the voluntary payment doctrine that dooms the unjust enrichment claim, which is the only claim where it appears even remotely possible that re-pleading could make a difference. All that said, the Court will

---

[9] Although all facts in the complaint are assumed to be true, the Federal Rules of Civil Procedure require that if a plaintiff seeks to allege fraud or mistake, those facts must be pled with particularity. Fed. R. Civ. P. 9(b).

entertain a motion to reconsider if Plaintiff wishes to explain why leave should be granted to file a third amended complaint.

ENTERED:

_____
Honorable Edmond E. Chang
United States District Judge

Date: September 29, 2011